UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE SANCHEZ | : | |
|     Petitioner, | : | CIVIL CASE NO. |
| | : | 3:12-CV-1562 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | JUNE 27, 2013 |
|     Respondent. | : | |

**RULING RE: PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 1)**

Petitioner George Sanchez ("Sanchez") proceeds pursuant to section 2255 of title 28 of the United States Code to vacate, set aside, or correct his federal criminal sentence (Doc. No. 1). Sanchez challenges his conviction and sentence on the grounds that he received ineffective assistance of counsel because his counsel advised him to plead guilty (1) without negotiating a drug quantity and specific sentence; (2) without advising him of various aspects about federal sentencing, and (3) by informing him that the court would impose a sentence within a guideline range (120-168 months) significantly lower than that which the court determined.

The respondent, the United States of America (the "government") opposes Sanchez's Motion. Specifically, the government argues that Sanchez has failed to show (1) that his counsels' performance was objectively unreasonable, and (2) that he suffered prejudice because the court engaged in a thorough plea canvass before accepting Sanchez's guilty plea.

For the reasons that follow, Sanchez's Motion to Vacate, Set Aside, or Correct Sentence is denied.

**I.      BACKGROUND**

On July 29, 2009, a federal grand jury returned a Second Superseding Indictment charging Sanchez and others with various narcotics-trafficking and firearm violations.  Gov't Mem. in Opp. (Doc. No. 11) at 2.  Sanchez was charged with, among other counts, conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine (Count One) and 50 grams or more of crack cocaine (Count Two), in violation of sections 841(a)(1), 841(b)(1)(A), and 846 of title 21 of the United States Code.  Id. at 3.

On September 22, 2009, the government began its case-in-chief in the trial against Sanchez and his co-defendant Joel Soto.  Id.  On the fourth day of evidence, on September 25, Sanchez pled guilty—without a plea agreement—to Counts One and Two of the Second Superseding Indictment.  Id.

According to Sanchez, his attorney Frank Riccio II advised him that it was in his best interest to plea and that he would not receive a sentence greater than 14 years—based on a drug quantity of 15 kilograms of cocaine—because the witness testimony regarding drug quantity could not be corroborated.  Sanchez Aff. at 1-2.  According to Sanchez, once he entered his guilty plea, the government indicated it would not agree to a quantity of 15 kilograms, instead arguing that Sanchez should be responsible for 326 kilograms of cocaine.  Id. at 2.  Sanchez claims that Attorney Riccio informed him that, if they entered into a stipulation agreeing to a quantity of 15 to 150 kilograms of cocaine, "it would stop all arguments [sic] in respect to quantity, would be meeting the government halfway and in exchange the court and the government would meet me halfway in sentencing me to 120-168 months . . ."  Id.

On May 26, 2010, the government and Sanchez entered into a joint stipulation in which the parties agreed to a base offense level of 36, under section 2D1.1(c)(2) of the United States Sentencing Guidelines.  Gov't Mem. in Opp. at 3; see also Gov't Appendix to Mem. in Opp. at 256, at ¶ 1.   The offense level reflected an attributable drug quantity of greater than 50 kilograms, but less than 150 kilograms, of cocaine.  Gov't Appendix to Mem. in Opp. at 256, at ¶ 1.  The parties also stipulated to a two level enhancement for a possession of a firearm, U.S.S.G. § 2D1.1(b)(1), a four level enhancement for Sanchez's role as a leader of criminal activity involving five or more participants, U.S.S.G. § 3B1.1(a), and a two level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a).  Gov't Appendix to Opp. at 256, at ¶¶ 2-4.  The government agreed not to seek a two level enhancement for obstruction of justice pursuant to section 3C1.1(a).  Id. at ¶ 5.

At sentencing, the court found—based on the testimony heard at trial and the facts set forth in the Pre-Sentence Report—that the quantity of cocaine attributable to Sanchez was greater than the quantity stipulated to by the parties.  Gov't Mem. in Opp. at 3; Gov't Appendix to Mem. in Opp. at 83 (finding a quantity of more than 150 kilograms of cocaine).  However, because the parties stipulated to a lower quantity, the court departed downward pursuant to United States v. Fernandez, 877 F.2d 1138 (2d Cir. 1989).  Gov't Appendix to Mem. in Opp. at 83 (stating that, "[t]he effect upon Mr. Sanchez will not change his guideline calculation as he understood coming in here today").  The court departed to an adjusted offense level of 40 and departed to a Criminal History Category IV.  Gov't Mem. in Opp. at 4; Gov't Appendix to Opp. at 93.

Mr. Sanchez's guideline calculation yielded a range of 360 months to life imprisonment. Id.  The court imposed a non-Guideline sentence of 330 months, a period of supervised release of 10 years, and a special assessment of $200.  Id.

Sanchez filed a Notice of Appeal on May 27, 2010.  Id.  On appeal, Sanchez challenged his sentence based on the court's calculation of drug quantity and the court's consideration of sentencing disparities.  See also United States v. Sanchez, 455 Fed. App'x 27, 29-31 (2d Cir. 2012).  On January 6, 2012, the Second Circuit Court of Appeals affirmed the sentence.  Gov't Mem. in Opp. at 4.

## II.     STANDARD OF REVIEW

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Ciak v. U.S., 59 F.3d 296, 301 (2d Cir.1995) (internal citation omitted). "As a general rule, relief is available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Napoli v. United States, 32 F.3d 31, 35 (2d Cir.1994) (internal citations and quotation marks omitted).

Because Sanchez proceeds pro se, the court must read his "submissions broadly so as to determine whether they raise any colorable legal claims."  Parisi v. United States, 529 F.3d 134, 139 (2d Cir.2008) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 145–46 (2d Cir.2002)).

**III.   DISCUSSION**

Sanchez makes three related arguments as to why his attorneys, Frank Riccio and Frank Riccio II, were ineffective.  First, he argues that his counsel failed "to come to an agreement with the government on the drug amount, specific sentence, and any other enhancements in the plea agreement in writing before [S]anchez plead guilty." Pet. Mem. in Supp. (Doc. No. 2) at 5.  Second, his counsel informed him that he would be sentenced within a range of 120 to 168 months, which is why he decided to plead guilty.  Id. at 10.  Third, counsel failed to advise him of the sentencing process in federal court, including the fact that the court may consider testimony brought forth at trial, and that such evidence is not held to the same standard—beyond a reasonable doubt—as at trial, but rather to a preponderance of the evidence standard.  Id. at 9.

To prevail on a claim for ineffective assistance of counsel, Sanchez must satisfy the two-part test set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, the petitioner must first show that his counsel's representation "fell below an objective standard of reasonableness." Id. at 688. Second, the petitioner must show that counsel's deficient performance caused prejudice to the petitioner.  Id. at 694.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

As to Sanchez's first argument—that his counsel, before Sanchez plead guilty, should have secured a plea agreement with the government stipulating to an attributable drug quantity of 15 kilograms and a specific sentence—there is no evidence

to support Sanchez's claim that counsel could have obtained such an agreement, i.e., that it was objectively unreasonable to have not secured such an agreement. As Frank Riccio II attests, "Mr. Sanchez elected to go to trial in his matter, despite advisements from my father and I that such a move was certainly a risky proposition." Riccio Aff. ¶ 5. After four days of evidence, "the government was no longer amenable to negotiating a plea agreement with him." Gov't Mem. in Opp. at 8-9. Sanchez has not introduced any evidence to suggest otherwise; he merely argues that counsel said they would arrange "a specific drug amount along with a specific sentence." Pet.'s Mem. in Supp. at 5. Sanchez admits that the government "was far from in agreement with a 15 kilogram cocaine drug amount, nor a 120-168 month sentence." Id.

Therefore, there is no evidence that Sanchez's counsel performed in an objectively unreasonable manner when they failed to obtain a plea agreement, including an agreement as to a drug quantity of 15 kilograms of cocaine or a specific sentence. All evidence suggests such an agreement was not possible at that late stage. See Morgan v. United States, 2009 WL 1172849, at *7 (E.D.N.Y. May 1, 2009) (finding there was no merit to claim that counsel was ineffective "in failing to secure a substantial assistance motion from the government" because government was unwilling to enter into agreement).

Furthermore, it was not objectively unreasonable to advise Sanchez to accept a plea that did not include a stipulation of drug quantity of 15 kilograms. In spite of the late stage of the case, counsel was able to eventually negotiate a sentencing stipulation with the government—after the court accepted Sanchez's guilty plea—which set forth a

drug quantity lower than that which the evidence at trial indicated, and in which the government agreed to a two-level reduction for acceptance of responsibility and to not seek a two-level enhancement for obstruction of justice.  Gov't Appendix to Opp. at 256.  Counsel's performance did not fall "outside the wide range of professional competent assistance," Strickland, 466 U.S. at 690, in that the plea negotiations still led to a lower guideline calculation than may have been warranted or could have been pursued by the government.  See Roldan v. United States, 1997 WL 214964, at *4 (S.D.N.Y. Apr. 25, 1997) (holding that counsel was not ineffective for advising Roldan to accept a plea agreement that waived safety valve application because "in exchange for his concession on the safety valve . . . Roldan received other advantages from the government").

To the extent that Sanchez is arguing that his counsel's performance was objectively unreasonable because they induced him to plead guilty under the belief that he would be sentenced based on 15 kilograms of cocaine, that argument is encompassed in Sanchez's second claim—that counsel informed him that he would be sentenced within a range of 120 to 168 months.[1]  This claim—as well as Sanchez's third claim that counsel failed to advise him of the sentencing process in federal court[2]—are, in essence, claims that ineffective assistance of counsel rendered his guilty plea involuntary.  Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992).

---

[1] For drug crimes, the guideline calculation is largely based on the quantity of drugs attributable to the defendant.  U.S.S.G. § 2D1.1

[2] Sanchez claims he was unaware that the court could consider evidence introduced at trial, that such evidence would be held to a lower standard than that at trial, and that the court could apply additional enhancements to his guideline calculation.  Pet. Mem. in Supp. at 2.

"Under prevailing law '[t]he standard [for determining the validity of guilty pleas] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses open to the defendant." Id. (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970). "Ineffective assistance of counsel may render a guilty plea involuntary, and hence invalid;" however, "to succeed with such a challenge, a defendant must meet the two-part test" from Strickland. Id.

The court need not determine, under the first prong of the Strickland test, whether counsel did, in fact, tell Sanchez he would be sentenced to a significantly lower period of incarceration or whether they failed to advise him of the federal sentencing process. Nor does the court need to determine whether such performance is objectively unreasonable. Under the second prong of the Strickland test, Sanchez has failed to prove—and cannot prove—that he was prejudiced by counsel's performance.

"When a petitioner claims his counsel 'mislead him as to the possible sentence which might result from [his] plea,' he cannot overcome Strickland's prejudice prong if he was made aware of 'the actual sentencing possibilities' and entered into the plea agreement anyway." Shah v. United States, 2013 WL 1641167, at * 4 (S.D.N.Y. Apr. 16, 2013); see also Ventura, 957 F.2d at 1058 (stating that, if a defendant has "been made so aware prior to entering the plea agreement" as to the terms of the plea, he cannot "show that 'but for counsel's unprofessional errors, the result of the proceedings would have been different'"); Rodriguez v. United States, 2012 WL 10551, at * 4 (D. Conn. Jan. 3, 2012) (same). As the government points out in its Opposition, "[b]y conducting a detailed colloquy, the [c]ourt ensured that Sanchez understood he could

8

not assume, predict, or anticipate what his ultimate sentence would be at the time of his guilty plea." Gov't Mem. in Opp. at 12.

The court informed Sanchez of the mandatory minimum sentence he could face under the statutes by which he was charged. The court said, "[m]y job today is to tell you to be sure that you understand the consequences and what I want you to understand is that the consequence here, I think you have to assume, would be to 20 years." Appendix to Mem. in Opp. at 46. Sanchez indicated that he understood the possible mandatory minimum he faced.[3] Id. at 47. The court went on to explain, at length, its obligations to determine the sentencing guidelines. The court explained that both the government and defense counsel will make arguments as to the guidelines, but that, "at the end of the day what has to happen [is the court] hear[s] everybody's arguments . . . [and] determine[s] . . . these guidelines. Id. at 56. The court explained that, when determining the guidelines, it "consider[s] what facts have been established by a preponderance of the evidence." Id. at 56. The court also informed Sanchez that the guidelines are:

> very much driven by the type of drug, the quantity of the drug, the role that you played in the conspiracy, whether guns were involved or not, that might be a factor. I can't say for sure. There are all sort[s] of factors that would be involved or will be involved. I don't know what the calculation will be. I would have to assume based on the evidence I heard to date . . . the quantities are such that you are probably at the top of those tables [or relatively close to the top]

Id. at 56-57. Not only did the court inform Sanchez of how drug quantity could ratchet up his guidelines calculation, it also informed him that it had no obligation to sentence him to any particular range and that it could "go above or go below the range." Id. at 57.

---

[3] The government had filed an Information pursuant to section 851 of Title 21 of the United States Code, which would have subjected Sanchez to a higher mandatory minimum were the court to determine, after a hearing, that he should be subjected to increased punishment by reason of prior convictions.

9

Sanchez indicated, to all of the court's statements, that he understood.  Id. at 57.

Therefore, the evidence reflects that, at the time he entered his guilty plea, Sanchez was fully aware of the potential sentence he faced.  He was fully aware that the court would base its guideline calculation on evidence it heard at trial and that it would adjudge that evidence based on a preponderance of the evidence standard.  Further, he was fully aware that the court would determine the drug quantity attributable to him and that there was a likelihood that the quantity would put him near the top of the guidelines chart.  Because Sanchez was aware of all of these aspects of his guilty plea, he cannot establish that "but for" counsel's allegedly deficient performance, he would not have plead guilty.  See Ventura, 957 F.2d at 1058.

Furthermore, because there are no material facts in dispute—and no basis by which Sanchez could establish at a hearing a prima facie case for relief, the court concludes that a hearing is not warranted in this matter.  Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) ("Rule 4(b) of the Rules Governing § 2255 Proceedings further provides that '[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'"); see also 28 U.S.C. § 2255(b) (stating that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto").

## IV. CONCLUSION

For the foregoing reasons, Sanchez's Motion to Vacate, Set Aside, or Correct Sentence is **DENIED**.  Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, any appeal from this Order would not be taken in good faith and a certificate of appealability shall not issue. The Clerk is directed to close the case.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 27th day of June, 2013.

                                                  /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge